FILED & JUDGMENT ENTERED
Steven T. Salata

Nov 02 2015

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_J. Craig Whitley_
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 15-31016 |
| James Baxter Pace, Jr. | ) | |
| | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

## ORDER REGARDING BANKRUPTCY ADMINISTRATOR'S MOTION FOR AN EXAMINATION OF THE DEBTOR'S TRANSACTIONS WITH HIS ATTORNEY UNDER FEDERAL RULE OF BANKRUPTCY 2017

This matter presents the question of whether a Chapter 7 debtor's attorney may take a security interest in the debtor's property prior to filing bankruptcy to secure both pre- and post-petition professional fees. On the facts presented, the attorney in this case may not for at least two reasons. First, because the attorney failed to comply with the applicable state rules of professional conduct, he may not retain a security interest in his debtor's property to secure fees incurred pre-petition. Second, and as for post-petition fees or fees unearned at the time of filing, debtor's legal and equitable interests in the liened property became property of the bankruptcy estate at filing and the Code Section 362 stay became effective. Thus, counsel was not authorized to encumber the property after bankruptcy pursuant to Sections 541 and 362. As more fully explained below,

1

debtor's attorney is therefore ordered to cancel his promissory note, release his liens on

debtor's property, and terminate his related UCC-1 Financing Statement.

The facts are undisputed and were all fully and voluntarily disclosed by debtor's

attorney, R. Keith Johnson.  Debtor, James Pace, Jr., first met with Johnson in March

2015 to obtain information and to explore whether filing bankruptcy would be beneficial.

Pace is the sole owner of a small company that files separate tax returns.  To better advise

Pace of his options, Johnson reviewed both Pace's personal and business's financial

statements and tax returns.  Sometime after initially consulting with Johnson, but before

deciding to file bankruptcy, Pace experienced several hardships that further strained his

financial situation: his wife lost her job; his mother required nursing care; and his

business slowed.  In mid-June 2015, Pace again consulted with Johnson regarding his

bankruptcy options.  At this point, Johnson began a more in depth analysis of Pace's

finances and Pace's business and began preparing bankruptcy schedules.

By June 23, 2015, it became apparent that Pace did not have the ability to pay to

file this case.  Johnson estimated his fees would be $6000 and expenses would be $500.

According to Johnson, as he had done with other clients, he advised Pace to discuss

borrowing money from relatives possibly in exchange for a lien on property.  Pace,

however, had no source to borrow funds.  At Johnson's request, Pace obtained valuations

on his motorcycle and boat.  Johnson then suggested that Pace grant Johnson a lien on

both the motorcycle and the boat to secure Johnson's fees.  Pace executed a promissory

note on June 26, 2015 for $6500 in favor of Johnson that required all principal and

interest be paid by December 26, 2015.  That same day, Pace signed a security agreement

granting a security interest in the boat and motorcycle to Johnson.  Pace signed the lien

recording application for the motorcycle on June 30, 2015.  That same day, Johnson filed

Pace's Chapter 7 bankruptcy case.  According to the North Carolina Department of

Secretary of State, Johnson filed a UCC financing statement for the boat approximately

two weeks later on July 17, 2015.

Upon reviewing Pace's petition, which lists Johnson as a secured creditor based

on his liens on the boat and motorcycle,[1] the Bankruptcy Administrator moved under

Bankruptcy Rule 2017 for an examination of Pace's transactions with his attorney.[2]  In

response, Johnson provided a detailed recitation of the circumstances that led to him

taking the liens.  Johnson included correspondence between his office, Pace, and the

---

[1] Pace's petition did not initially list Johnson as a secured creditor on Exhibit D.  Pace amended Exhibit D to include Johnson on July 14, 2015, the same day the UCC-1 on debtor's boat was filed.

[2] Rule 2017 provides:

> (a) Payment or transfer to attorney before order for relief.  On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive.

> (b) Payment or transfer to attorney after order for relief.  On motion by the debtor, the United States trustee, or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case.

Chapter 7 trustee.  Additionally, Johnson provided his time records that show he billed

for 11.70 total hours as of August 5, 2015, 9 of which were incurred pre-petition.

Johnson argues that but for Pace's granting him the liens, Pace would not have

been able to afford filing bankruptcy.  Johnson believes he was doing his client "a favor

by agreeing to defer payment."  Had Johnson not extended these terms, to raise funds to

file bankruptcy, he believes Pace would have had to sell the boat and motorcycle at a

distress sale that would have netted much less than the actual value.  Johnson asserts that

the terms of the agreement were fair and equitable and that his fee rate was in keeping

with his thirty years of experience as a bankruptcy specialist.

This Court has no reason to question the sincerity of counsel's statements.

However, it cannot agree with his conclusion that such transactions are permissible.  For

obvious ethical and practical reasons, an attorney taking a lien on his debtor's property is

not common.  It takes little imagination to hypothesize how the interests of counsel and

client could collide.  For instance, what would happen if a debtor failed to satisfy the

terms of an applicable promissory note?  Would the attorney be able to foreclose on the

encumbered property?[3]  Would the attorney need to move for relief from stay?  If so, who

would represent the debtor in a defense of the motion?

Given this, while the Code does not expressly prohibit the practice, taking liens in

favor of a Chapter 7 debtor's counsel to secure pre-petition fees is strongly discouraged

---

[3] *See* 2008 North Carolina Formal Ethics Opinion 12 (April 24, 2009) ("Although
Lawyer could acquire a deed of trust on the property if he complied with Rule 1.8(a),
enforcing the security interest while currently representing the grantor of the interest,
even in an unrelated matter, creates a conflict of interest in violation of Rule 1.7(a)(2).
Moreover, Rule 8.4(g) provides that it is professional misconduct for a lawyer
intentionally to prejudice or damage his or her client during the course of the professional
relationship, except as may be required by Rule 3.3.  Lawyer should not initiate
foreclosure proceedings against Client until the representation is concluded.").

and subject to "heightened scrutiny of the propriety of this type of fee agreement." *In re Alfieri*, 468 B.R. 414, 417 (Bankr. M.D. Fla. 2011) (quoting *In re Parkhurst*, No. 01-40744, 2002 WL 33939708, at *5 (Bankr. D. Idaho Mar. 22, 2002)).

Even if permitted by the Code, attorneys who choose to take a security interest in their client's property must comply with applicable state bar rules. *Alfieri*, 468 B.R. at 417 ("Certainly, the attorney must demonstrate compliance with the applicable bar rules."); *Parkhurst*, 2002 WL 33939708, at *4 (requiring compliance with Idaho Rule of Professional Conduct 1.8). North Carolina Rule of Professional Conduct 1.8 (Rule 1.8) permits an attorney to take such a lien but establishes safeguards to protect against exploitation. Rule 1.8 provides in relevant part:

> (a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest directly adverse to a client unless:
>
> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;
>
> (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and
>
> (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.
>
> . . . .
>
> (i) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

(1) acquire a lien authorized by law to secure the lawyer's fee or expenses, provided the requirements of Rule 1.8(a) are satisfied;
. . . .

We need not weigh each requirement of Rule 1.8 in this case.  Johnson admits he did not advise Pace in writing of the desirability of seeking independent legal counsel on the transaction, and he thus did not comply with the rule.  Instead, Johnson argues the interest acquired is not directly adverse to Pace's making Rule 1.8 inapplicable.  Johnson asserts:

> It seemed to me that his alternatives, other than to grant a security interest for fees, would be to not file the bankruptcy case, or to be forced to sell at a very quick sale the motorcycle and boat to produce fund to pay attorney fees.  I actually think that I was doing my client, under those very specific circumstances, a favor by agreeing to defer payment, albeit secured by the lien on the boat and motorcycle.

In all fairness, Johnson was likely acting with his client's best interests at heart.  But, by taking these liens, Johnson obtained rights against the collateral appurtenant to being a secured creditor.  In Chapter 7, debtors and their secured creditors are adversaries.  Accordingly, Rule 1.8 applies.  *See Parkhurst*, 2002 WL 33939708, at *2 (rejecting arguments that counsel "was simply doing his clients a favor by allowing them to sign a promissory note rather than requiring them to pay his fees and costs 'up front' primarily because they could not afford to do so" and that the arrangement was no different than if the clients had to sell the collateral at a " 'fire sale' price to pay his fees in cash before filing for relief").  Because Johnson admittedly failed to meet the high standards required by Rule 1.8, he must release his secured interests for pre-petition fees.

While pre-petition fees may in limited circumstance be secured via liens on debtor property provided that the applicable ethical rules are followed, the Bankruptcy Code

6

does not permit a Chapter 7 debtor's attorney to be paid for post-petition services out of estate property. Nor does it allow him to do indirectly what he cannot do directly under the guise of taking a lien on a Chapter 7 debtor's property to secure post-petition fees. As we all know, a bankruptcy estate consists of all legal and equitable property interests of the debtor as of the commencement of the case. 11 U.S.C. § 541(a)(1). After filing bankruptcy, a debtor is no longer able to transfer or encumber property of the bankruptcy estate absent court approval. The automatic stay prohibits it. 11 U.S.C. § 362(a)(4).

Johnson claims that the $1350 in fees incurred post petition are secured by his security interest in Pace's boat and motorcycle. However, because Johnson's fees were not yet earned at the time of filing, Pace's property was not yet encumbered by his debt owed for post-petition fees. *In re Equip. Servs., Inc.*, 290 F.3d 739, 746 (4th Cir. 2002) ("[I]f the relationship is a trust arrangement in which the attorney holds the retainer for the client as security for the payment of future fees, then the retainer so held, less any fees charged against it, constitutes the property of the client.") *aff'd sub nom. Lamie v. U.S. Tr.*, 540 U.S. 526 (2004). Consequently, upon filing this case, Pace's property interests were transferred to the bankruptcy estate. *In re Mahendra*, 131 F.3d 750, 756 (8th Cir. 1997) ("The debtor's equitable interest in the unearned portion of the retainer becomes property of the estate upon the filing of the bankruptcy petition."); *Indian Motocycle Assocs. III Ltd. P'ship v. Mass. Hous. Fin. Agency*, 66 F.3d 1246, 1255 (1st Cir. 1995) (noting that a debtor's interest in any unearned portion of a retainer becomes property of the bankruptcy estate). Thus, there is no property interest in the boat and motorcycle outside the bankruptcy estate remaining to secure Johnson's post-petition fees, and Johnson is not entitled to compensation from estate funds. *Lamie*, 540 U.S. at

538 ("Adhering to conventional doctrines of statutory interpretation, we hold that §

330(a)(1) does not authorize compensation awards to debtors' attorneys from estate

funds, unless they are employed as authorized by § 327.").

Therefore, it is **ORDERED** that:

(1) Johnson must release his security interest on Pace's motorcycle and boat
purporting to secure pre-petition fees; and

(2) Pace's unencumbered interest in his boat and motorcycle transferred to the
bankruptcy estate upon filing, leaving no interest remaining to secure
Johnson's post-petition fees.

**This Order has been signed electronically.**                    **United States Bankruptcy Court**
**The judge's signature and the court's seal**
**appear at the top of the Order.**